KADEMENOS et al., Appellants and Cross–Appellees,

v.

HARBOUR HOMEOWNERS ASSOCIATION, Appellee and Cross–
Appellant, Harbor Lagoons Association, Appellee.

[Cite as *Kademenos v. Harbour Homeowners Assn.*,
193 Ohio App.3d 112, 2011-Ohio-1266.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–10–042.

Decided March 18, 2011.

**114**

Janet L. Phillips, for appellants and cross-appellees.

Gregg A. Peugeot, for appellee and cross-appellant.

Cullen J. Cottle, for appellee Harbour Lagoons Association.

---

YARBROUGH, Judge.

{¶ 1} This is an appeal and cross-appeal from a judgment of the Erie County Court of Common Pleas that granted summary judgment in favor of appellee and cross-appellant, Harbour Homeowners Association, and appellee, Harbour Lagoons Association, on claims for breach of contract and declaratory relief. The underlying dispute in this case is whether appellees are obligated to dredge a portion of the Pipe Creek waterway to provide appellants/cross-appellees boat access to Sandusky Bay and Lake Erie. Upon consideration of the assignments of error, we affirm.

{¶ 2} The undisputed facts of this case are as follows. On July 21, 2001, appellants/cross-appellees, Victor and Evon Kademenos, purchased waterfront property in the Harbour Lagoons Subdivision ("subdivision") located along Pipe Creek in Sandusky, Ohio. By virtue of this ownership, the Kademenoses became members of appellee, the Harbour Lagoons Association ("Lagoons Association"), a homeowners association.

{¶ 3} On May 30, 1992, the original developer of the subdivision, Admiral's Harbour, Inc. ("AHI"), entered into an agreement ("AHI–HOA Agreement") with a neighboring homeowners association, Harbour Homeowners Association ("HOA"), appellee and cross-appellant, that stated, "[HOA] shall dredge the

canals and waterways adjoining the Harbour and the Harbour Lagoons Subdivision, as it may from time to time be expanded, as needed."

{¶ 4} Later, on July 31, 1996, AHI and the Lagoons Association entered into the Pipe Creek Channel Operating Agreement ("PCCO"), which created the Pipe Creek Channel Association, for the purpose of "maintaining, dredging, and preserving the channel constructed in Pipe Creek and a portion of East Sandusky Bay ('Channel')." In the PCCO, "Channel" is defined as "Sections A and G as shown in the 'Master Dredging Plan' "—a document provided by the Army Corps of Engineers that was incorporated into the PCCO, and which provides a map of all of the relevant waterways. AHI and the Lagoons Association are the only members of the Pipe Creek Channel Association. HOA is a nonmember owner.

{¶ 5} This dispute is over the rights and duties created by paragraph 2(a) of the PCCO, which provides for contributions from nonmember owners, stating:

{¶ 6} "Under an agreement dated as of May 30, 1992 between AHI and HOA * * * HOA agreed to assume responsibility for dredging the canals and waterways adjoining the Harbour Properties and the Lagoons Subdivision as expanded, including Sections C and D as shown on the Master Dredging Plan (and Sections B and E if such sections are created as part of the Lagoons Subdivision) * * *."

{¶ 7} Further, paragraph 7 of the PCCO provides: "The Owners acknowledge that several of the Harbour Properties and other Properties contain separate canal systems that provide access to Pipe Creek but are not considered to be part of the Channel for purposes of this agreement. The Owners acknowledge and agree that * * * [iii] HOA is solely responsible for the maintenance, dredging, and preservation of Sections C and D of the Master Dredging Plan (and Sections B and E if such sections are created as part of the Lagoons Subdivision) as provided in the [AHI–HOA Agreement]."

{¶ 8} The subdivision, as originally contemplated by AHI, would be comprised of lots located along four canals, referred to as Sections B, C, D, and E, respectively, which would feed into the main channel, referred to as Section A. Section A, which runs along Pipe Creek on the side opposite from the Kademenoses' property, provides boat access to Sandusky Bay and Lake Erie. As identified in the Master Dredging Plan, only Sections C and D were existing canals; Sections B and E were "to be dry excavated." In December 1996, AHI sold its remaining property in the subdivision to Harbour Lagoons Ltd., now known as 4920 Milan Investments, Ltd. ("Milan"). Milan redesigned the subdivision, and in so doing eliminated the plans to create Section B. The Kademenoses' property is located on land that would have been excavated had Section B been created.

{¶ 9} The events that led to this action involve a July 3, 2003 letter that Victor Kademenos wrote, requesting that HOA dredge the waterway adjoining his property to provide access to Sandusky Bay and Lake Erie. HOA responded by a letter dated September 3, 2004, in which HOA refused to dredge the waterway, stating that it had no such obligation. Consequently, on October 29, 2008, the Kademenoses filed a complaint against HOA, Lagoons Association, Milan, Pipe Creek Channel Association, and John Does 1 through 5 containing claims for breach of contract for "failing to dredge and maintain [Section] B," and for declaratory judgment that "[d]efendants are responsible to dredge [Section] B of the Pipe Creek Channel."[1]

{¶ 10} After the initial pleadings were received, the trial court ordered that dispositive motions were to be filed by March 15, 2010. HOA, Lagoons Association, and Milan timely filed motions for summary judgment. The Kademenoses did not respond to these motions. On April 28, 2010, the trial court, in two separate judgment entries, granted summary judgment for HOA, Lagoons Association, and Milan, holding that Section B was never created and therefore no obligation to dredge or maintain Section B arose.

{¶ 11} Shortly thereafter, on April 30, 2010, the Kademenoses filed a "Motion for Reconsideration of the Court's Decisions Entered April 28, 2010" and a "Motion for Leave to File Brief in Opposition and Cross Motion for Summary Judgment *Instanter*." The trial court granted both motions on June 3, 2010, setting aside the April 28, 2010 judgments, and allowing the Kademenoses to file a brief in opposition and cross-motion for summary judgment. In addition, on August 2, 2010, the Kademenoses filed a "Motion for Relief from Judgment Entered April 28, 2010." The trial court, in judgment orders dated August 17, 2010, August 19, 2010, and August 25, 2010, granted the Kademenoses' "Motion for Relief from Judgment Entered April 28, 2010," but at the same time granted HOA's, Lagoon Association's, and Milan's motions for summary judgment.[2] The trial court again based its decisions on the grounds that Section B was never created and therefore, under the clear and unambiguous terms of the contract, no obligation to dredge Section B arose.

{¶ 12} The Kademenoses now appeals these three summary-judgment orders. HOA cross-appeals the June 3, 2010 order granting the Kademenoses' motion for

---

1. The original term used in the Kademenoses' complaint is "Channel B." However, in paragraph 15 of the complaint, the Kademenoses note that "Section B" is also referred to as "Channel B." We will therefore consider the terms to be interchangeable, but for simplicity will refer to it only as Section B.

2. On August 31, 2010, the trial court issued a judgment clarifying its rulings in the earlier judgments and dismissing the matters against Pipe Creek Channel Association and John Does 1 through 5 as moot. The Kademenoses do not appeal from this judgment.

reconsideration and the August 17, 2010 order granting the Kademenoses' motion for relief from judgment.

{¶ 13} The Kademenoses asserts the following single assignment of error:

{¶ 14} "The trial court erred in its interpretation of the Pipe Creek Channel Agreement wherein it found that the natural existing waterway portion of Channel B was not 'created' and therefore gave rise to no obligation on the part of the defendants to 'dredge the waterways adjoining the harbour and the Harbour Lagoons Subdivision as expanded' and thereby granting defendants' motions for summary judgment."

{¶ 15} We note at the outset that an appellate court reviews summary-judgment rulings de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Applying Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 16} The case before us turns on the interpretation of terms in a contract. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning–Ferris Indus. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271. Contractual language is ambiguous only when its meaning cannot be derived from the four corners of the agreement, or when the language is susceptible of two or more reasonable interpretations. *Wolf v. Miller Diversified Consulting, L.L.C.*, 6th Dist. No. WD–07–049, 2008-Ohio-1233, 2008 WL 726535, ¶ 24.

{¶ 17} "In construing any written instrument, the primary and paramount objective is to ascertain the intent of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 509 N.E.2d 411. Common words appearing in the agreement "are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 245–246, 7 O.O.3d 403, 374 N.E.2d 146. If the terms are clear and unambiguous, the court cannot interpret the contract in a manner

inconsistent with the intent of the parties as expressed by their clear language. Id. at 246.

**{¶ 18}** The Kademenoses essentially make two arguments in support of their assignment of error. The first argument is that Section B is comprised of two parts—an existing natural waterway that crosses Pipe Creek and an artificial canal that would be created by excavating dry land. Indeed, as illustrated in the Master Dredging Plan, a portion of Section B starts from Section A, crosses Pipe Creek, and then runs inland approximately at the site of the Kademenoses' property. The Kademenoses argue that although the artificial-canal portion of Section B was never constructed, Section B nonetheless exists to the extent of the natural-waterway portion crossing Pipe Creek.

{¶ 19} Paragraph 2(a) of the PCCO states that "HOA agreed to assume responsibility for dredging the canals and waterways * * * including Sections C and D as shown on the Master Dredging Plan (and Sections B and E if such sections are created as part of the Lagoons Subdivision)." This language indicates that the creation of Section B is a condition precedent to HOA's obligation to dredge, in that the obligation arises only if Section B is created. See *Polek v. Tillimon* (Mar. 1, 2002), 6th Dist. No. L–01–1354, 2002 WL 313401 ("A condition precedent is an occurrence that must take place before a contractual obligation becomes effective"). Under the Kademenoses' view, because the natural-waterway portion of Section B exists directly adjacent to their property, and because their property is within the subdivision, Section B must necessarily have been created as part of the subdivision. Thus, the condition precedent was satisfied, and HOA has an obligation to dredge the portion of Section B adjacent to their property. However, we disagree with the Kademenos' characterization of Section B.

{¶ 20} The clear understanding and intent of the parties was that Section B was not comprised of two different parts but rather was a single unit that was not in existence at the time of the agreement. A plain reading of the conditional language in paragraph 2(a)—"and Sections B and E *if such sections are created* as part of the Lagoons Subdivision" (emphasis added)—indicates that the parties understood that Section B was a unitary concept, and that it was not currently part of the Lagoons Subdivision. In addition, the Master Dredging Plan states: "Sections B and E to be dry excavated." The use of the future tense "to be" indicates that Section B did not exist at the time and would be created by digging the artificial canal out of the dry land. Finally, correspondence from the United States Army Corps of Engineers that states that construction of Section B was completely voluntary and that deciding not to construct Section B did not violate the permit further supports the conclusion that Section B is a single unit and that it has not been constructed.

{¶ 21} The Kademenoses base their argument on the drawing in the Master Dredging Plan that shows Section B crossing Pipe Creek and then running inland. However, this argument ignores the accompanying text in the drawing stating that Section B is "to be dry excavated." The natural effect of this language is to indicate the manner in which Section B would be created and therefore recognizes implicitly that Section B did not currently exist. To conclude that part of Section B already existed as a natural waterway would be contrary to the plain meaning of this text.

{¶ 22} In addition, the Kademenoses' interpretation of Section B fails because it would render a portion of paragraph 2(a) meaningless. " 'In the interpretation of a promise or agreement or a term thereof * * * an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.' " *Pokorny v. Pecsok* (1977), 50 Ohio St.2d 260, 268, 4 O.O.3d 434, 364 N.E.2d 241, quoting what is currently Restatement of the Law 2d, Contracts (1981), Section 203. Here, if the parties had understood and intended that Section B was composed of a natural-waterway portion and an artificial-canal portion, then the use of conditional language would have been meaningless as to the waterway portion because the condition would have already been satisfied at the time the agreement was created. Instead, we choose to give full effect to the condition of creation by concluding that the parties intended that Section B is a single unit that would be created only upon the dry excavation of an artificial canal. The parties agree that the canal portion of Section B was never dry excavated. Thus, because Section B was never dry excavated, it was never created. Therefore, the condition precedent was not satisfied, and consequently HOA's obligation to dredge and maintain Section B never arose.

{¶ 23} The Kademenoses' second argument is that even independent of the creation of Section B, HOA has an obligation to dredge the waterway adjacent to their property. To support this, the Kademenoses cite the portion of paragraph 2(a) of the PCCO that states that "HOA agreed to assume responsibility for dredging the canals and waterways adjoining the Harbour Properties and the Lagoons Subdivision as expanded." The Kademenoses argue that because the portion of Pipe Creek that adjoins their property is a waterway, and because their property is within the Lagoons Subdivision, HOA has a responsibility under the PCCO to dredge the waterway adjacent to their property. However, the Kademenoses' interpretation again runs counter to the clear intent of the parties.

{¶ 24} Paragraph D of the PCCO indicates that construction of the "Channel" and any maintenance, dredging, or preservation thereof will be subject to permits issued by the Army Corps of Engineers or other governmental agencies. In this case, the permit issued by the Army Corps of Engineers authorizes dredging in

accordance with the Master Dredging Plan. Thus, the clear intent of the parties is that any obligation to dredge must be limited to those areas authorized by the Master Dredging Plan. This intent is further evidenced by the parties' use of the sections as identified in the Master Dredging Plan to describe the respective dredging obligations. For example, paragraph C creates the Pipe Creek Channel Association for the purpose of "maintaining, dredging, and preserving the channel constructed in Pipe Creek and a portion of East Sandusky Bay ('Channel')," and defines "Channel" as "Sections A and G of the Master Dredging Plan"; paragraph 2 provides that HOA shall have sole responsibility for dredging Sections C and D (and B and E if they are created); and paragraph 7 states that the Marina shall have sole responsibility to dredge Section F, JHW shall have sole responsibility to dredge Section I, and HOA shall have sole responsibility to dredge Sections C and D (and B and E if they are created). Therefore, the Kademenoses' argument that the language in paragraph 2(a) requires HOA to dredge all canals and waterways that adjoin the subdivision, even if those waters are not considered part of a section in the Master Dredging Plan, is without merit.

{¶ 25} In conclusion, we hold that based on the four corners of the PCCO agreement, the only reasonable interpretation of paragraph 2(a) is that HOA's obligation to dredge is limited to the extent consistent with the Master Dredging Plan. Further, because Section B—as identified in the Master Dredging Plan—was never dry excavated, it was never created, and therefore HOA has no obligation to dredge the waterway in front of the Kademenoses' property. Accordingly, the Kademenoses' assignment of error is not well taken.

{¶ 26} On cross-appeal, HOA asserts the following two assignments of error:

{¶ 27} 1. "The trial court erred when it granted appellants' motion for reconsideration."

{¶ 28} 2. "The trial court erred when it granted appellants' motion for relief from judgment."

{¶ 29} Because we uphold the lower court's award of summary judgment, these assignments of error are rendered moot. Accordingly, HOA's first and second assignments of error are not well taken.

{¶ 30} For the foregoing reasons, the judgment of the Erie County Court of Common Pleas is affirmed. Costs are assessed to appellants pursuant to App.R. 24.

Judgment affirmed.

PIETRYKOWSKI and SINGER, JJ., concur.