DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Erie County Court, Milan, Ohio, in an action for recovery of boat towing fees. Because we conclude that the trial court did not err in determining the terms and the amount owed under the agreement between the parties, we affirm.
 {¶ 2} Appellant, Lake Erie Towing ("LET"), sued appellee, Robert R. Troike, for $2,725, claiming that it had provided "salvage" services to appellee. Troike answered, denying that he had agreed to the claimed amount. The following facts were presented at trial.
 {¶ 3} On October 5, 2003, Troike and his wife were on their way out to fish on their 24 foot fiberglass Lyman inboard power boat when the boat ran aground on a sand bar in Sandusky Bay. Troike said that the boat itself was still afloat in the water, but a motor propeller was stuck in the sand. Troike said he called for help on his cell phone, and very shortly after, LET's tow-boat, the "Express," skippered by Captain James Kennedy, arrived and offered to give assistance. Troike did not call LET directly, and it is unclear exactly how the Express was contacted.
 {¶ 4} After approximately one and a half hours, the boat was freed, and the Troikes motored back to port under their boat's own power. A dispute arose when appellee was provided with a $2,725 bill for the "ungrounding." LET contended that under maritime law, "ungrounding" constituted a salvage operation, justifying much higher fees than what would normally be charged for towing a boat. LET also stated that it had a signed written contract showing that Troike agreed to pay the amount requested, which was $100 per foot plus a $150 hourly rate. Kennedy said that although initially he told Troike that the fees would be $10 per foot, this charge changed to $100 when a crewman entered the water to attach a line to Troike's boat. Kennedy said that it was the crewman's responsibility to tell Troike of this new rate. The crewman testified that he did, in fact, tell Troike of the increase.
 {¶ 5} Troike testified that when the Express first arrived, Kennedy told him the fees would be $10 per foot plus an hourly rate, unless a bigger boat was needed. Although Troike initially said that he thought the hourly rate was $100, he conceded that the captain might have said $150 per hour. No bigger boat was called out. Troike noted that, before towing services could begin, he was asked to sign a release, which was only partially filled out and did not state the fee charges or a total. Troike stated that no one at any time ever told him of an increase in the per foot fee. He said that if he had known that the cost would be $100 per foot, he would have declined the towboat's services, since his boat was only worth about $3,300.
 {¶ 6} The trial court determined that maritime law was not applicable to the proceedings and that the terms of the agreement for the services provided were $10 per foot plus $150 per hour. The court awarded LET $465 as the amount owed and denied Troike's request for attorney fees.
 {¶ 7} LET now appeals from that judgment, arguing the following two assignments of error:
 {¶ 8} "1. The trial court improperly labeled the Appellant's efforts as towing services, as opposed to salvage services.
 {¶ 9} "2. The trial court erred by limiting the Plaintiff-Appellant's recovery in this case to $465.00 when the Appellant saved the Appellee's 24-foot Lyman vessel from peril at the location of the Bay Point Sand Bar at the mouth of the Sandusky Bay."
 {¶ 10} We will address LET's two assignments of error together. LET essentially contends that the trial court mislabeled the services provided and erred in failing to award it higher fees. According to LET, if the services are "salvage" services, then it may charge as much as $300 per foot in addition to the hourly rate. If the services are deemed to be towing, however, the fee rates are much less: $10 per foot plus the hourly rate. We agree with the trial court — this case does not turn on the interpretation of maritime salvage law definitions. Rather, it is simply about the disputed or missing terms of an ambiguous contract, and the trial court's determination of those terms, based upon extrinsic evidence and the credibility of the witnesses. Regardless of the type of services rendered, the real issue is what Troike was told and what he agreed to pay for those services.
 {¶ 11} An appellate court generally must presume that the findings of the trier of fact are correct. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 79-80. The trier of fact is in the best position to make factual findings, since it has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed on appeal through the written record. Id.; Miller v. Miller (1988), 37 Ohio St.3d 71. "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Seasons Coal Co., supra, at 81. See, alsoState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 12} An appellate court's role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries
(February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. (1978), 54 Ohio St.2d 279, 376.
 {¶ 13} Contracts that are, by their terms, clear and unambiguous require no real interpretation or construction, and courts will enforce such contracts as written. Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.,78 Ohio St.3d 353, 362. When a term of a contract is determined to be ambiguous, then the determination of what the actual terms were becomes a question of fact. See Inland Refuse Transfer Co.v. Browning-Ferris Industries of Ohio (1984), 15 Ohio St.3d 321,322. To make factual determinations regarding ambiguous contract terms and the parties' intent, courts may consider extrinsic evidence, i.e., evidence outside the four corners of the contract. See Shifrin v. Forest City Ents., Inc. (1992),64 Ohio St.3d 635, 638. Extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contracts, were made; (2) the objectives the parties intended to accomplish by entering into the contracts; and (3) any acts by the parties that demonstrate the construction they gave to their agreements.Blosser v. Carter (1990), 67 Ohio App.3d 215, 219. As a general rule, contracts should be strictly construed against the drafting party. Christe v. GMS Mgt. Co., Inc. (1997),124 Ohio App.3d 84, 88.
 {¶ 14} In this case, the parties had a contract, based in part on verbal statements made at the time services were rendered. The written contract states, in pertinent part:
 {¶ 15} "In all towing and salvage requests, as well as, other operations undertaken by LET charges will be based on: 1. Our published rates. 2. An agreed upon price, or 3. A percentage of the post casualty value of the vessel. Rates will be subject to adjustment because of time of day, weather conditions, and risk to personnel and property of LET. An emergency response fee will be charged, if applicable. If operation is a salvage/ungrounding the above fees will apply plus a salvage/ungrounding fee of ten dollars to three hundred dollars per ft. times the length of the vessel. * * *"
 {¶ 16} Nowhere in the contract does it show a pre-printed list of fees. The contract states that salvage fees begin at $10 per foot. Since the rate varies for each situation and is not determined until the job is over, the contract language permits the total to be at the sole discretion and whim of LET. Consequently, the reference to "above fees" would always be ambiguous as to the actual rate which was agreed to be charged.
 {¶ 17} Likewise, nothing in or written onto the agreement indicates that this was a particularly difficult job, justifying the increase from $10 to $100. On the front of the agreement, there are lines for filling in the ultimate charges. On Troike's contract, under "Towing" it lists "150 = 225." Several lines down, it then lists "Salvage Fee" as "100 a foot = 2400." On the next line, under "Other," an additional $100 charge is listed with tiny illegible printing next to it. Nothing is written on the lines next to "Unground," "Night," or "Weather."
 {¶ 18} Kennedy acknowledged that the initial per foot fee communicated to Troike was $10. Since the captain had no way of knowing what might actually happen during the towing operation or how long it would take, the actual level and amount of fees could not have been determined and added onto the contract until the job was complete. Thus, a logical inference is that, prior to any services provided, when Troike signed the release on the back of the agreement, the exact fees, other than the hourly rate, would not have been written in on the front. Since there is a dispute about the verbal terms which were later allegedly incorporated into the written document, the court properly examined the extrinsic evidence offered by the parties. We must now determine whether the trial court's factual findings are supported by the evidence and if its interpretation of the contract terms accurately reflects the parties' intent and whether the original terms were modified.
 {¶ 19} It is essentially undisputed that the first quote for fees provided to Troike was $10 per foot plus $150 per hour. Appellee agreed to this price and the tow-boat began its attempt to free the boat. The evidence as to subsequent events and changes to the per foot price is conflicting.
 {¶ 20} LET, the drafter of the alleged written "salvage" contract, contends that the terms changed to $100 per foot as soon as one of the crew members waded through the water to attach a line to appellee's boat. The crewman testified that he told appellee of this change in fee. This same crewman also testified, however, that the boat was valuable as a wooden "antique" type boat that would never sell for less than $10,000 to $15,000. In reality, the boat was fiberglass and had just been purchased for $3,300. Moreover, the captain did not tell Troike of any change in fee, and could not corroborate that the crewman actually apprised him of the change. The captain also acknowledged that the weather was good, it was daytime, and that upon arriving at the scene, he told Troike that the boat did not look to be "stuck too bad."
 {¶ 21} Troike, on the other hand, said that the captain stated the fee would be $10 per foot plus the hourly rate as long as another larger boat was not needed. No other boat was called, and nothing about the weather or circumstances indicated that any extraordinary measures were taken which would justify increasing the fee. In our view, wading in the water by the crewman to attach a line to Troike's boat does not demonstrate the type of extraordinary, dangerous activity normally associated with the rescue and salvage of a damaged, grounded, sinking ship. After considering the evidence presented, the trial court found Troike's version of the events to be credible and simply did not believe that he was apprised of an increase in or agreed to pay more than $10 per foot.
 {¶ 22} Based upon our complete review of the record, we conclude that the trial court's factual findings regarding the terms of the contract were supported by the evidence presented. Therefore, the trial court's award of $465 was properly calculated based upon those terms — $240 (24 feet × $10) plus $225 (1.5 hours at $150 per hour). Accordingly, appellant's first and second assignments of error are not well-taken. Appellee's request for attorney fees is denied.
 {¶ 23} Judgment of the Erie County Court, Milan, Ohio, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J., Singer, P.J., Skow, J. Concur.