[Cite as *Joseph Bros. Co., L.L.C. v. Dunn Bros., Ltd.*, 2019-Ohio-4821.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Joseph Brothers Company, LLC         Court of Appeals No. L-18-1229

      Appellant                       Trial Court No. CI0201404624

v.

Dunn Bros., Ltd., et al.               **DECISION AND JUDGMENT**

      Appellee                      Decided: November 22, 2019

* * * * *

Peter R. Silverman, Mark D. Wagoner and Matthew T. Kemp,
for appellant.

Thomas W. Heintschel and Douglas W. King, for appellee.

* * * * *

**OSOWIK, J.**

## Introduction

{¶ 1} This case concerns a dispute over an agreement that created an access license and a sign easement. The agreement was created in 1985 between Joseph Brothers Company, a predecessor to the plaintiff-appellant, Joseph Brothers Company, LLC, and Dunn Brothers, a predecessor to the defendant-appellee, Dunn Bros., Ltd.

**{¶ 2}** Generally, the access license allowed Dunn Brothers and its customers to traverse across the property of Joseph Brothers Company. The agreement also allowed Dunn Brothers to install a sign identifying its auto sales business on Joseph Brothers' property.

**{¶ 3}** On November 17, 2014, the Joseph Brothers Company, LLC (hereinafter "appellant") filed a seven-count complaint in the Lucas County Court of Common Pleas against Dunn Bros., Ltd. (hereinafter "Dunn") and Toledo Sign Company. As against Dunn, appellant filed an action for a declaratory judgment that the access license had been extinguished through "abandonment" and/or that it terminated by its own terms (Count 1); an action for a declaratory judgment that the sign easement "must be restricted" (Count 2); an action for a declaratory judgment that the sign easement has been terminated and that the sign must be removed (Count 3); an action to quiet title, pursuant to R.C. 5303.01 (Count 4); and an action in trespass with respect to the non-conforming sign (Count 5). Appellant filed a separate trespass claim against Toledo Sign Company (Count 6) and a claim as to both defendants for punitive damages (Count 7). Appellant voluntarily dismissed Toledo Sign from the case on July 6, 2015.

**{¶ 4}** Both parties filed motions for summary judgment. On October 1, 2018, the trial court found that there were no material questions of fact that would permit termination of either the access license or the sign easement and that Dunn was entitled to judgment as a matter of law as to all claims asserted against it. As set forth below, we affirm, in part, and reverse, in part.

2.

## The 1985 Agreement

{¶ 5} In 1985, the Joseph Brothers Company owned commercial property to the south of, and bordering, State Route 2 in Oregon, Ohio. State Route 2 (a.k.a. Navarre Avenue) is a "main commercial thoroughfare." Joseph Brothers Company operated a commercial shopping center on the property, which stretched from State Route 2 to Dustin Road. Dustin Road is one block to the south, and runs parallel to State Route 2. It owned an additional parcel of land to the south of Dustin Road. On December 27, 1985, it sold that additional parcel to Dunn Brothers. Dunn Brothers purchased the property for the purpose of operating its car dealership. Thus, after the sale, and from north to south, the order was State Route 2, the Joseph property, Dustin Road, the Dunn property.

{¶ 6} The Dunn property had no direct access to State Route 2. Therefore, in connection with the sale, the parties entered into an agreement, titled "License Agreements," (hereinafter "the Agreement") consisting of two parts. One part granted Dunn Brothers and its customers "continuous, uninterrupted access" across the Joseph property from State Route 2 to access the Dunn property (the "access license"). The second part granted Dunn Brothers an "irrevocable and perpetual license" to install an "identification sign" on the Joseph property, near State Route 2, so that it could identify its car dealership (the "sign license"). The Agreement is set forth in full below:

## LICENSE AGREEMENTS

JOSEPH BROTHERS COMPANY, an Ohio general partnership, hereinafter referred to as "Grantor", in consideration of the purchase by the

3.

below Grantee from Grantor of certain real property describe on Exhibit "A" attached hereto and made a part hereof, which said property fronts on Dustin Road, a dedicated thoroughfare in the City of Oregon, Lucas County, Ohio (the "Benefitted Property"), does hereby grant to DUNN BROTHERS, its employees, customers, and invitees, an Ohio general partnership, the purchaser of the Benefitted Property, hereinafter referred to as "Grantee", a license for continuous, uninterrupted access to and from the Benefitted Property across Dustin Road to State Route 2 (Navarre Avenue) for vehicular and pedestrian traffic over and across a certain portion of real estate owned by Grantor described on Exhibit "B" attached hereto (the "Burdened Property"), which certain portion is fully described on Exhibit "C" attached hereto and designated as "Access License" on the Plot Plan attached hereto as Exhibit "D" (the "Access License"). The Access License shall remain in effect so long as Grantee is the record owner of the Benefitted Property.

The Access License shall at all times be maintained by Grantor and Grantor shall keep it reasonably free of debris, snow and other impediments. The Access License may be relocated from time to time by Grantor within the Burdened Property, provided it is at all times twenty

(20) feet in width and provides access to and from State Route 2 (Navarre Avenue) from the Benefitted Property consistent with this Agreement.

Grantor also hereby grants to Grantee an Irrevocable and perpetual license to erect and maintain a single pole identification sign advertising Grantee's business on the Benefitted Property ("Sign License") over, under and upon the area so designated on Exhibit "D" ("Sign License Area") for the purpose of identifying Grantee's business operations on the Benefitted Property. Any such sign shall be installed on the Sign License Area in conformance with all applicable codes and ordinances of the City of Oregon and shall contain a maximum of one hundred twenty-five (125) square feet on each face.

The Sign License shall run with the land and be binding upon and inure to the benefit of Grantor and Grantee and their respective successors and assigns, and the Access License shall be binding upon and inure to the benefit of Grantee and Grantor, and Grantor's successors and assigns.

IN WITNESS WHEREOF, the Grantor has executed this Agreement on the 27th day of December, 1985.

JOSEPH BROTHERS COMPANY, an
Ohio general partnership

5.

**The dispute over the Dunn's right of access**

{¶ 7} According to appellant, Dunn Brothers transferred the Dunn property (also referred to herein as the "benefited property") to Dunn on August 15, 1997. [1]  Appellant claims that, because the access license remained in effect only "so long as" the "Grantee" (defined as "Dunn Brothers * * * an Ohio general partnership") was the "record owner" of the benefited property, the access license terminated upon Dunn Brothers' transfer of the property.  Appellant argues that Dunn is "merely a successor" to Dunn Brothers, with "no rights under the Access License."  In further support of its argument, appellant points to the absence of any "successor and assign" language with respect to Dunn Brothers' rights under the access license.  That is, the Agreement provides that the access license shall be binding upon and inure to the benefit of "Grantee and Grantor, and Grantor's successors and assigns."   By contrast, the Agreement provides that the sign license shall run with the land and be binding upon and inure to the benefit of "Grantor and Grantee and their respective successors and assigns."  Appellant claims that the absence of language including the grantee's successors and assigns—with respect to the access license—was purposeful and "reinforces the conclusion that the [access license] is no longer in effect because Dunn [Brothers] no longer owns the [benefited] property."

---

[1] Records from the Lucas County Recorder's Office confirm that "DUNN BROTHERS AN OHIO GENERAL PARTNERSHIP" transferred parcel 4423337, known as 3000 Dustin Road, Oregon, Ohio for $0 on August 15, 1997 to "DUNN BROS., LTD., AN OHIO LIMITED LIABILITY COMPANY."

{¶ 8} In addition, appellant argues that the access license was "extinguished through abandonment and a material change in the circumstances giving rise to the creation of the [Access] License." According to appellant, the city of Oregon constructed a "new" public roadway, called Harbor Drive, in 1995 that connects State Route 2 and Dustin Road and runs adjacent to, and just west of, the Dunn Property. In its complaint, appellant claimed that "the purpose of [the] Access License was to allow traffic to access" the Dunn Property because "there was no direct public street access" from State Route 2 to the Dunn Property. With the construction of Harbor Drive, appellant claims that an issue of fact exists with respect to whether the purpose of the access license has been rendered obsolete.

{¶ 9} In response, Dunn maintains that the access right was not extinguished "merely because of a change in ownership." It stresses that the sole principles of each organization (Thomas Dunn and James Dunn) remained the same and that the reorganization from partnership to limited liability company was nothing more than a "natural evolution [that occurred] when limited liability companies were recognized by Ohio statute." Dunn adds that the intent of the contracting parties was to provide a right of access "as long as the Dunns owned the property and dealership." With respect to the creation of Harbor Drive, Dunn argues that the access license still serves the purpose for which it was created and that it was neither abandoned nor rendered obsolete.

{¶ 10} The trial court found that Dunn was entitled to judgment as a matter of law as to both issues. That is, it found that the change from partnership to limited liability

7.

company did not result in a change in ownership of the property "for purposes of the access agreement" because both entities are owned by the same individuals, i.e., James Dunn and Thomas Dunn and therefore there was no basis "for termination of the access license." Similarly, it found that "[t]he fact that there is now a second manner of access to Dunn's property does not negate that the fact that access can still be obtained by using [appellant's] property [and] [t]herefore the purpose of the license still exists."

## The dispute over the sign

{¶ 11} Dunn's "irrevocable and perpetual" right to "erect and maintain" a sign on appellant's property was subject to five restrictions. It was limited to (1) a "single pole identification sign" (2) "advertising [Dunn's] business on the Benefited property;" (3) "over, under and upon" a designated area of appellant's property. The sign was also required to (4) conform "with all applicable codes and ordinances of the City of Oregon" and (5) "contain a maximum of * * * [125] square feet on each face."

{¶ 12} In 1986, Dunn Brothers installed a sign along Navarre Avenue, on the property of then-Joseph Brothers, appellant's predecessor. The two-sided sign identified "Dunn Chevrolet Buick" on each side and was supported by two cylinder-shaped poles, not one pole, as provided by the Agreement.

{¶ 13} In 2012, Dunn hired Toledo Sign to replace the original sign, and the project was completed in early 2013. Toledo Sign sales representative, Dana Fairchild, who oversaw the project, testified during his deposition that the project entailed removing the old sign and replacing it with two separate, smaller signs, one on top of the other.

8.

The upper sign has a "fixed" message (identifying "Dunn" as a Chevrolet and Buick dealership), and the lower sign is an electronic message board. The original poles (or "I-beams,") that supported the old sign remain in place but were shortened, and the poles were disguised by adding modular-looking, aluminum "coverings." The coverings provide no structural support and are merely "fluff." Dunn paid Toledo Sign $87,000 for the project.

{¶ 14} Appellant complains that the "visual footprint" of the new sign is "far greater than the old sign." It argues that the combined square footage of the upper sign, the lower sign and the "face" of the coverings, which it calls "pillars," should be included for purposes of calculating the square footage of each sign face. If so, appellant claims that "the dimensions add up to *at least* 222 square feet - far more than the 125 square feet allowed by the Sign Easement." Appellant argues that while the upper sign is "reasonably consistent with the old sign," the lower board is "garish." Appellant asserts, and Dunn does not dispute, that the lower sign is capable of displaying "moving pictures, text, and other advertising information." Appellant claims that Dunn never sought approval for the new sign prior to erecting it, and that it immediately objected to the new sign by filing the instant lawsuit.

{¶ 15} Dunn counters that the time to challenge the two pole sign has long since expired, either by operation of the statute of limitations set forth in R.C. 2305.06 or pursuant to the doctrine of laches and that the new sign is otherwise compliant with the terms of the sign easement.

9.

**{¶ 16}** In its decision, the trial court found that appellant waived its right to challenge the two pole violation of the sign easement, that the new sign otherwise complied with the terms of the agreement and therefore that the sign easement remained in full force and effect.

**{¶ 17}** The trial court also concluded that appellant could not maintain a common law trespass claim against Dunn, as a matter of law, because Dunn held an easement to install and maintain a sign and therefore had authority to enter the property.

**{¶ 18}** Appellant appealed the trial court's October 1, 2018 judgment and raises three assignments of error for our review:

> **First Assignment of Error:** The trial court erred in granting summary judgment for Dunn Brothers and in failing to grant summary judgment for Joseph Brothers with respect to termination of the access license.

> **Second Assignment of Error:** The trial court erred in granting summary judgment for Dunn Brothers and in failing to grant summary judgment for Joseph Brothers with respect to Dunn's violation of the sign license.

> **Third Assignment of Error:** The trial court erred in granting summary judgment for Dunn Brothers on Joseph Brothers' trespass claim.

10.

## Standard of Review

{¶ 19} Appellate review of a summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We employ the same standard as the trial court, without deference to it. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). A motion for summary judgment may be granted only when it is demonstrated (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 20} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

11.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reviewing a ruling on summary judgment, an appellate court restricts its consideration to the same evidentiary materials that were properly before the trial court at the time it ruled on the summary judgment motion. *Guernsey Bank v. Milano Sports Enters., LLC*, 177 Ohio App.3d 314, 2008-Ohio-2420, 894 N.E.2d 715, ¶ 30 (10th Dist.).

### The rights created by the Agreement

{¶ 21} We first address the terms "access license" and "sign license," as set forth in the Agreement. The construction of an instrument of conveyance is a question of law, which the appellate court reviews under a de novo standard of review. *Walbridge v. Carroll*, 172 Ohio App.3d 429, 2007-Ohio-3586, 875 N.E.2d 144 (6th Dist.), ¶ 16.

{¶ 22} Generally, an easement is defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 38, quoting *Black's Law Dictionary* at 622. An "interest in land" is "far broader than ownership of property and encompasses an interest in using the land, such as an easement." *Id.*

{¶ 23} A license "is a privilege given to an individual to do an act upon the land of another *without* possessing any interest therein and is usually terminable at the will of the licensor." (Emphasis added.) *Cambridge Village Condominium Assn. v. Cambridge Condominium Assn.*, 139 Ohio App.3d 328, 333, 743 N.E.2d 954 (11th Dist.2000), citing

12.

*Mosher v. Cook*, 62 Ohio St.2d 316, 317, 405 N.E.2d 720 (1980). "If the parties intend for an agreement to be permanent, the license is said to be coupled with an interest." *Dalliance Real Estate, Inc. v. Covert*, 11th Dist. Geauga No. 2013-G-3139, 2013-Ohio-4963, ¶ 33. "A license coupled with an interest becomes irrevocable, meaning that it is no longer terminable at the will of the licensor, and constitutes a right to do the act rather than a mere privilege to do it. * * * An irrevocable license is said to be an easement rather than a license." *Cambridge Village* at 333-334.

{¶ 24} The distinction between a license and an easement (i.e., a license coupled with an interest), was recently explained as follows:

> There are several distinguishing characteristics between an easement and a license:  a license is terminable at the will of the licensor, an easement is not; a license cannot be assigned, and does not pass at death; a license terminates upon conveyance of the land; a license is an agreement, binding only on the parties to it; an easement is an interest in real property which runs with the land. *Falcone Bros., Inc. v. Pawmew, Inc.*, 5th Dist. Stark No. 2016CA00209, 2017-Ohio-6958, ¶ 21, quoting *Weir v. Consolidated Rail Corp.,* 12 Ohio App.3d 63, 465 N.E.2d 131 (8th Dist.1983).

{¶ 25} In this case, the rights created under the Agreement were irrevocable.  That is, Dunn Brothers' right to access Joseph Brother's property and its right to install a sign were not terminable at the will of Joseph Brothers.  The irrevocable nature of the rights

13.

created by the Agreement supports the conclusion that both the "the access license" and the "sign license" were licenses coupled with an interest (or easements). On the other hand, the "access license," as discussed in greater depth with respect to appellant's first assignment of error, was not "assignable," but rather was terminable upon the conveyance of the land by Dunn Brothers, which is indicative of a mere license. Given that the access right has attributes of both a license and a license coupled with an interest, we use the language designated by the original parties to the agreement, i.e., an "access license," with the caveat that it created an interest in the property in favor of Dunn Brothers and that that interest was not revocable by Joseph Brothers. *See, e.g., Schlabach v. Kondik*, 7th Dist. Harrison No. 16HA017, 2017-Ohio-8016, ¶ 33 (Describing the plaintiff's interest in a lease as "a hybrid" with attributes of an easement and a license).

{¶ 26} By contrast, the right to install the sign was both irrevocable and freely assignable, by Dunn Brothers, i.e., it "ran with the land." Therefore, and as addressed with respect to appellant's second assignment of error, the right to erect a sign is a license coupled with an interest. For ease, we refer to it as an "easement," and we note that while appellant challenged that designation before the lower court, it now concedes that the agreement created a sign easement.

### The access license terminated upon the transfer of the benefited property by Dunn Brothers to Dunn

{¶ 27} We first address appellant's argument that the transfer of the benefited property from Dunn Brothers to Dunn caused the access license to terminate. "In

construing a written instrument, the primary and paramount objective is to ascertain the intent of the parties. The general rule is that contracts should be construed so as to give effect to the intention of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. *Id.* When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992), syllabus. The initial determination of whether an ambiguity exists presents a question of law subject to a de novo review. *Aultman*.

{¶ 28} Here, the access license remains in effect so long as the "Grantee" is "the record owner" of the benefited property. The Agreement defines "Grantee" as "DUNN BROTHERS, its employees, customers and invitees, an Ohio general partnership, the purchaser of the Benefited Property." The definition does not include any entity other than Dunn Brothers, nor does it contemplate a change in ownership or legal status. The parties agree that Dunn's reorganization from partnership to limited liability company amounted to a change in "legal status." *See, e.g., Germano v. Beaujean*, 6th Dist. Wood No. WD-12-032, 2013-Ohio-3846, ¶ 15, citing *Dexxon Digital Storage, Inc. v. Haenszel*, 161 Ohio App.3d 747, 2005-Ohio-3187, 832 N.E.2d 62, ¶ 64 (5th Dist.) ("An Ohio limited liability company is neither a corporation nor a partnership, but hybrid containing attributes of each. * * * Ownership of the L.L.C. rests not in partners or shareholders, but

15.

with members."). Under the explicit terms of the Agreement, we find that Dunn cannot be considered a "grantee."

{¶ 29} Lending further support to our conclusion is the fact that the Agreement specifies that the access license "shall be binding upon and inure to the benefit of Grantee and Grantor, and Grantor's successors and assigns." It does *not* include the grantee's successors and assigns—with respect to the access license—whereas it does include the grantor's successors and assigns, and it includes both parties' successors and assigns with respect to the sign easement.

{¶ 30} In a similar case, a grantor sold a parcel of land to a school district but reserved for itself the "Grantor's right of first refusal" to buy back the land. The grantor also reserved "by Grantor, for itself and its successors and assigns, the following easements: [described therein]." *Board of Education v. Homewood Corporation*, 10th Dist. Franklin No. 96APE02-246, 1996 WL 469278 (Aug. 13, 1996). Sometime after the sale, the grantor assigned its right of first refusal to the plaintiff-appellant. When the plaintiff-appellant attempted to exercise its right of first refusal, the school district filed a declaratory action seeking a judgment that the appellant's claimed interest in the property was void and unenforceable. The lower court found in favor of the school district, and the Tenth District Court of Appeals affirmed, finding that although "the law generally favors the assignability of contract interests, including contract interests in real property," the right of first refusal in that case was "personal to [the grantor] and not assignable. While the easements set forth under paragraph two were expressly extended to [the

grantor's] successors and assigns, this language is strikingly absent from the [provisions] which established the right of first refusal." *Id.* at *3. *Accord Davis v. Anthony*, 7th Dist. Columbiana No. 97CO19, 1998 WL 896453 (Dec. 21, 1998), *3 (Right of first refusal was personal and could not be assigned where the terms "heirs" and "assigns" were "[c]onspicuously absent" from the provision creating the right of first refusal.). In this case, we agree with appellant that the exclusion of the grantee's successors and assigns appears to have been deliberate and reflects the parties' intention neither to bind, nor benefit, any successor of Dunn Brothers.

{¶ 31} Dunn argues that the "change in ownership [from partnership to limited liability company] was not such a change in record ownership so as to extinguish the Access Right." We find no support for Dunn's position. Although the Agreement does not define "record owner," Black's Law Dictionary (6th Ed.1990) defines that term as the "*person in whose name title appear on official records* in contrast with one who claims title through unrecorded documents." (Emphasis added.) Dunn concedes that the record ownership of the benefited property changed, from Dunn Brothers to Dunn, and that the transfer was recorded by deed. (*See* Answer at ¶ 9, 14 *and* Affidavit of James Dunn at ¶ 5 *and* Dunn's Sept. 11, 2015 discovery responses in which Dunn produced "the deed * * * evidencing the transfer of the property from Dunn Brothers Partnership to Dunn Bros. Ltd.").

{¶ 32} We also reject the suggestion by Dunn that the change from partnership to limited liability company transferred ownership of the benefited property, by operation of

17.

law.  Throughout its brief, Dunn states that Dunn Brothers was "converted" to a limited liability company "once limited liability companies were recognized by statute."  Ohio's "Limited Liability Company Act," was enacted in 1994.  *See* R.C. 1705.01 et seq.  A "conversion" is a type of merger, also created by the Act but not until October 12, 2006, whereby an "entity," including a partnership may be converted into a limited liability company.  R.C. 1705.361.  ("[P]ursuant to a written declaration of conversion * * *, a domestic or foreign entity other than a domestic limited liability company may be converted into a domestic limited liability company.").  A conversion "avoids the dissolution of one form of entity with the transfer of the assets to the owners and then a second transfer of the distributed assets to a new entity."  Blackford, *Baldwin's Ohio Practice, Business Organizations*, Section 14:16:25 (2d Ed.).

{¶ 33} However, in order to convert an entity into a domestic limited liability company and to enjoy the benefits of conversion by statute, R.C. 1705.361 requires a specific written declaration of conversion setting forth enumerated terms.  Further, R.C. 1705.381 requires that a certificate of conversion, signed by the authorized representative of the converting entity, be filed with the secretary of state.  The record in this case before the court today contains no evidence that any of these statutory requirements have been met.

{¶ 34} Finally, Dunn argues that the intent of the access license was to grant a right of access across appellant's property "so long as a car dealership owned by the Dunns existed on Dustin Road."  The contract construction urged by Dunn conflicts with

18.

the express language of the Agreement, which is that the access license remain in effect "so long as Grantee is the record owner of [the property]." As set forth above, we find no ambiguity in these terms, and to find otherwise would amount to the making of a new contract for the parties, which is not the function of this court. Indeed, "[i]t is not the responsibility or function of this court to rewrite the parties' contract to provide for such circumstances. Where a contract is plain and unambiguous as herein, it does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties." *Aultman* at 54-55.

{¶ 35} Based upon the above, we find that, under the plain and unambiguous language of the Agreement, the access license terminated upon the transfer of the benefited property from the grantee, Dunn Brothers, to Dunn. The trial court erred by denying appellant's motion for summary judgment on this point. Appellant's first assignment of error is well-taken, in part. In light of our decision that the access license was terminated, we find the balance of appellant's argument, that the creation of Harbor Drive rendered the access license obsolete, is moot, and therefore, we decline to address it.

**The Sign Easement**

{¶ 36} In its second assignment of error, appellant alleges that the "new sign" violates the sign easement in three respects: (1) it has two poles in violation of the "single pole" requirement, (2) it "goes well beyond what is needed to identify the Dunn Chevrolet business," and (3) it exceeds the allowable maximum of 125 square feet per

side. Appellant argues that it is entitled to judgment as a matter of law with respect to the first issue and that material facts remain with respect to the second and third issues requiring this court to remand the case for trial.

{¶ 37} An easement is a non-possessory interest in the land of another. *Crane Hollow, Inc. v. Marathon Ashland Pipe Line*, 138 Ohio App.3d 57, 66, 740 N.E.2d 328 (4th Dist.2000). There are two kinds of easements: easements in gross and easements appurtenant. "An easement appurtenant requires a dominant tenement to which the benefit of the easement attaches or 'appertains' and a servient tenement upon which the obligation or burden rests." *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. Lake No. 2003-L-192, 2005-Ohio-3398, ¶ 24. "Easements appurtenant" run with the land and thus transfer with the property as long as some record of the easement appears in the chain of title of the dominant property. *Pence v. Darst*, 62 Ohio App.3d 32, 574 N.E.2d 548 (2d Dist.1989). An "easement in gross" generally does not have a dominant estate and is purely servient, existing entirely independent of ownership of the land. *DeShon v. Parker*, 49 Ohio App.2d 366, 361 N.E.2d 457 (9th Dist.1974). Ohio law disfavors easements in gross, and, as such, easements are not considered in gross "when it can be fairly construed to be appurtenant to some estate." *Ryska* at ¶ 24.

{¶ 38} The easement at issue here is appurtenant: it runs "over, under and upon" the servient land owned by appellant to provide "an irrevocable and perpetual license to erect and maintain a single pole identification sign advertising [Dunn]'s business operations on the Benefited Property," i.e., the dominant estate.

20.

**{¶ 39}** The creation of an easement may be express, implied, or by prescription. *Trattar v. Rausch*, 154 Ohio St. 286, 95 N.E.2d 685 (1950), paragraph two of the syllabus. In order to create an express easement, the owner of the servient property must grant or convey to the owner of the dominant property a right to use or benefit from its estate. An express easement may be created by grant, reservation or exception in a deed. *See Yaeger v. Tuning*, 79 Ohio St. 121, 124, 86 N.E. 657 (1908); *Gateway Park, LLC v. Ferrous Realty Ltd.*, 8th Dist. Cuyahoga No. 91082, 2008-Ohio-6161, ¶ 29. Here, the parties agree that the sign easement is an express easement.

1. The statute of limitations bars appellant's "single pole violation" claim.

**{¶ 40}** The parties argue over whether appellant may enforce the "single pole" provision set forth in the sign easement. Dunn argues that the 15-year statute of limitations set forth under the former version of R.C. 2305.06 ("Contract in Writing") bars appellant's claim. Alternatively, Dunn argues that appellant waived its right to enforce the provision by failing to raise the issue over the course of many years and causing Dunn to believe that it did not object to the two poles which, in turn, induced it to modernize the sign in 2012-2013, at a cost of over $87,000. Appellant counters that the doctrines of waiver, estoppel, and laches do not apply to express easements, and even if they did, there is a material question of fact as to whether those doctrines preclude it from objecting to the "new sign."

**{¶ 41}** To determine the appropriate statute of limitations with respect to a declaratory judgment claim we look to the underlying nature or subject matter of the

21.

claim. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) ("[I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial.").

{¶ 42} Appellant seeks a declaratory judgment that the sign easement "has been terminated" due to Dunn having violated the express terms of the easement by installing a sign that is "inconsistent" with its terms, i.e., the terms pertaining to the single-pole, purpose and size of the sign. We find that appellant's claims arise under the sign easement provision of the Agreement and are therefore subject to the statute of limitations found in R.C. 2305.06, entitled "Contract in Writing." *Accord Rudolph v. Viking Internatl. Resources Co.*, 4th Dist. Washington No. 15CA26, 2017-Ohio-7369, ¶ 4; *Ohio Edison Co. v. Wilkes*, 7th Dist. Mahoning No. 10MA174, 2012-Ohio-2718, ¶ 45-57 and *Hoffman v. City of Akron*, 9th Dist. Summit No. 12724, 1987 WL 9348 (Apr. 1, 1987) (Claim for breach of an express easement subject to R.C. 2305.06). *But see Byers v. DiPaola Castle, L.L.C. v. Portage Cty. Commrs.*, 11th Dist. Portage No. 2014-P-0047, 2015-Ohio-3089, ¶ 30 (Though styled as a "breach of contract" claim, the cause of action involved the "scope of [an] easement" rather than the actual terms of the contract to enter into an easement and was therefore governed by the ten-year statute of limitations set forth in R.C. 2305.14).

22.

{¶ 43} R.C. 2305.06 provides that, "[e]xcept as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within eight years after the cause of action accrued." The statute was amended from 15 years to 8 years on September 28, 2012. "For causes of action that are governed by section 2305.06 of the Revised Code and accrued prior to the effective date of this act, the period of limitations shall be eight years from the effective date of this act or the expiration of the period of limitations in effect prior to the effective date of this act, whichever occurs first." (*See* Section 4 of the uncodified law underlying the amendment to R.C. 2305.06). As set forth below, we find that appellant's claim with respect to the alleged single pole violation accrued in 1986, was subject to the 15-year statute of limitations, and expired in 2001.

{¶ 44} Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. *Collins v. Sotka*, 81 Ohio St.3d 506, 507, 692 N.E.2d 581 (1998).

{¶ 45} Here, the alleged wrongful act occurred in 1986. Appellant does dispute that the poles were installed in an "open, obvious and apparent" manner. While it does not address the statute of limitations argument directly, appellant insists that its claim accrued in 2012/2013 when Dunn installed the "completely new and entirely different double pillar sign."

{¶ 46} The evidence in the record does not support appellant's argument. Through the testimony of Fairchild, Dunn established that the original poles remain

23.

cemented in place, that they continue to serve as the supports for a sign, and that the changes made to the poles in 2012/2013 were for cosmetic purposes only.[2] Indeed, it is those cosmetic changes to the sign posts that appellant finds objectionable, despite framing the issue as one involving a violation of the single pole provision. Appellant states that the "original poles" are now "vastly different in appearance." Thus, if the original sign was supported by a single pole, and Dunn disguised it with the same aluminum coverings, with the same "visual foot print" as the new sign, appellant's fundamental disagreement with the project would be no different, i.e., that a "narrow, round, visually unobtrusive" pole had been obscured with a "wide flat" pillar. But, appellant's right to control the sign's appearance is subject to the express terms of the easement, i.e., the single pole, purpose, size, location, and compliance with city building codes.

{¶ 47} Because the two poles remain fundamentally unchanged since their installation, we conclude that appellant's claim accrued in 1986. To the extent that the original sign, with its two poles, violated the single pole provision, the 2012 redesign did not trigger a "new period" within which to challenge the one-pole provision. Pursuant to R.C. 2305.06, appellant had 15 years, until 2001, to file suit. Appellant did not file suit until 2014, some 13 years past the deadline, and therefore, its claim with respect to the

---

[2] The city's permit for the 2012 project included the following "stipulation:" [DUNN/INSTALLER] MUST USE SAME FOUNDATION AND POLE STRUCTURE."

24.

single pole violation is barred as a matter of law. Because this claim is time-barred, we find no error in the trial court's dismissal of that claim. Moreover, in light of our decision, we find that Dunn's laches defense is moot, and we decline to address it. *Accord Graham v. Allen Cty. Sheriff's Office*, 3d Dist. Allen No. 1-06-14, 2006-Ohio-4183, ¶ 12.

### 2. The new sign otherwise complies with the sign easement.

{¶ 48} Appellant claims that issues of fact exist with respect to whether the new sign complies with "the two other major limitations in the easement," i.e., that it not exceed 125 square feet on each side and that it be an "identification sign."

{¶ 49} "When an easement is created expressly, the extent and limitations of the easement depend upon the language of the creating instrument." *Merrill Lynch Mortgage Lending, Inc. v. Wheeling & Lake Erie Railway Co.*, 9th Dist. Summit No. 24943, 2010-Ohio-1827, ¶ 35 citing *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 318, 594 N.E.2d 1 (2d Dist. 1990).

{¶ 50} *a. The size limitation*. The sign easement restricts the size of each sign face to "a maximum of one hundred twenty-five (125) square feet." Dunn put forth evidence to show that the upper, fixed sign and the lower sign board each measure 57 square feet, for a total of 114 square feet. According to Fairchild, that measurement is well under the 127 foot limit set by Chapter 1337 of the Oregon, Ohio Code of Ordinances, governing "Sign Regulations." The record also includes a copy of the city permit authorizing Dunn to install a "114 SF FREESTANDING SIGN ALTERATION"

25.

and a copy of a report indicating that the new sign passed inspection after its installation. Even appellant agrees that "[t]he area of the sign with words itself is 114 square feet." We find that Dunn put forth sufficient evidence to show that the new sign complied with the easement's limitation.

{¶ 51} The burden of rebuttal then shifted to appellant to "set forth specific facts showing that there is a genuine issue for trial" by "affidavit or as otherwise provided in this rule." Civ.R. 56(E). Appellant's rebuttal evidence consists of an affidavit from its former counsel who measured the square footage of the face of each "pillar," added it to the 114 square footage figure and arrived at a total square footage of 222 feet per sign face. Appellant's "position" is that the face of the pillars should be included in the calculation of each sign face, despite conceding that the pillars/coverings bear no words or markings of any sort. In support, appellant relies on Section 1337.02(c) of the Sign Regulations, which provides that the area of a sign *"may* include supporting structures." (Emphasis added.) Of course, as evidenced by the permit and the inspection report, they were not included for that purpose in this case. Absent any evidence to support its contention that the "sign area" includes the supports, we find no genuine issue of material fact left for trial and that Dunn is entitled to judgment as to appellant's size violation claim.

{¶ 52} *b. The purpose of the sign easement*. Finally, appellant challenges the use of the sign board to advertise "deals on cars, free oil changes, and Honeybaked Hams" and even the "necessity" of a "garish flashing multimedia board."

26.

{¶ 53} The sign easement granted Dunn the right to install an "identification sign advertising [Dunn's] business on the Benefited Property * * * for the purpose of identifying [Dunn's] business operations on the Benefited Property."

{¶ 54} Appellant claims that the easement does "*not * * * * allow 'advertising' in* [the] sense of soliciting customers with particular deals, but rather [is limited] to *identify[ing]* Dunn's business, i.e., to name it and to let people on Navarre Avenue know the business is there." (Emphasis in original.)

{¶ 55} We disagree. The easement plainly allows both: advertising and identifying. The easement does not define the term "advertising," but Merriam-Webster's Dictionary defines it as "the action of calling something to the attention of the public especially by paid announcements." The term "business" is defined as "a commercial activity engaged in as a means of a livelihood." *See www.merriam-webster.com.*

{¶ 56} Dunn operates an automobile dealership. Using the sign board to call attention to the commercial activities it provides on the Dustin Road property, i.e., car sales, oil changes, and likely a host of other auto-related activities is allowed by the easement. We reject appellant's argument that the easement restricts the use of the sign to anything other than identifying the location of the dealership.

{¶ 57} On the other hand, the record also indicates that Dunn used the sign board to advertise on behalf of Honeybaked Hams during the 2013 holiday season. The parties

27.

agree that when appellant complained, Dunn removed the advertisement, and there is no evidence of misuse of the sign since then.

{¶ 58} An easement holder may not impose additional burdens upon the servient estate by engaging in additional usage of the easement. *Centel Cable Television Co. of Ohio, Inc. v. Cook*, 58 Ohio St.3d 8, 567 N.E.2d 1010 (1991) (holding that allowing the stringing of coaxial cable in the easement along with other utilities was not an additional burden). If the dominant estate does increase the burden, the easement may be terminated, but that remedy is not required. *Walbridge v. Carroll*, 184 Ohio App.3d 355, 2009-Ohio-5183, 920 N.E.2d 1046, ¶ 17 (6th Dist.) (holding that although the village abused the easement by allowing trespassing vehicles access to the easement, termination was not required and was not the appropriate remedy). Here, the trial court found that "[the Honeybaked Ham] violation, standing on its own, [is] not a sufficient basis for terminating the easement." We agree. Dunn's concession that the sign board is limited to advertising its Dustin Road business is sufficient.

{¶ 59} Finally, appellant also claims that a dispute of fact exists over whether "a garish flashing multimedia board is necessary to fulfill the easement's purpose of identifying Dunn's business." Again, the parties are bound by the terms of the sign easement, and appellant's ability to limit the design, structure and content of the sign are set forth in the easement. Nowhere in the easement was appellant granted the authority to determine whether a particular type of sign is "necessary" to achieve its purpose. Moreover, "changes in the use of the easement are permitted to the extent they result

28.

from normal growth and development of the dominant land, and are a proper and reasonable use of the easement." *Myers v. McCoy*, 5th Dist. Delaware No. 2004CAE07059, 2005-Ohio-2171, ¶ 2. Dunn's modernization of its signage to include an electronic message board was permissible, subject to the express terms of the easement.

{¶ 60} As set forth above, we find that appellant's second assignment of error is not well-taken and that Dunn is entitled to judgment as a matter of law with respect to the appellant's declaratory action to have the sign easement terminated.

**Appellant's trespass claim is barred as a matter of law.**

{¶ 61} In its third assignment of error, appellant asserts that the trial court erred in granting summary judgment to Dunn with respect to its common law trespass claim. Appellant argues that, "[a]s demonstrated * * *, Dunn has exceeded the scope of the Sign Easement and therefore is exceeding the scope of its authority to act on [appellant's] property (or at the very least, there are factual issues as to the scope of the easement)."

{¶ 62} A "common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *." *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998). But, "a cause of action in trespass will not lie when the purported trespasser holds an easement to the property on which he or she is purportedly trespassing." *See, e.g., Bayes v. Toledo Edison Co.*, 6th Dist. Lucas Nos. L-03-1177,

29.

L-03-1194, 2004-Ohio-5752, ¶ 68. This is so, even when there is an issue of fact as to whether the grantee exceeded the scope of the easement. *Id.* at ¶ 73-75 (Common law trespass claim properly dismissed where plaintiff granted a license to utility company to use his driveway and traverse across his property but summary judgment improperly granted where trial court failed to "determine the scope of the easements and their relevance to [plaintiff's] claims for damages.").

{¶ 63} In this case, because Dunn enjoyed an express easement to erect and maintain a sign on appellant's property, appellant cannot show that Dunn did not have authority to enter its property. Consequently, the trial court properly dismissed appellant's trespass claim, irrespective of whether Dunn had exceeded the scope of its authority, which as previously discussed, we see no evidence of. In all events, Dunn is entitled to judgment as to appellant's common law trespass claim against it, and appellant's third assignment of error is not well-taken.

## Conclusion

{¶ 64} In review, appellant's first assignment of error is found well-taken, in part, and we therefore reverse, in part, the lower court's October 1, 2018 decision and judgment. As set forth herein, the access license is deemed to have been terminated upon the transfer of the benefited property. Appellant's second and third assignments of error

30.

are found not well-taken, and the balance of the trial court's decision, granting judgment in favor of Dunn, is affirmed.   Pursuant to App.R. 24, the court orders that the parties share the costs of this appeal in equal measure.

Judgment reversed, in part,<br>
and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                          

                                    _____
                                    JUDGE
Thomas J. Osowik, J.            
CONCUR.

                                    _____
                                    JUDGE

Christine E. Mayle, P.J.,                _____
CONCURS, IN PART, AND                         JUDGE
DISSENTS, IN PART.

**MAYLE, P.J.**

{¶ 65} I concur with the majority's resolution of appellant's first and third assignments of error, but disagree with its resolution of appellant's second assignment of error.  More specifically, I disagree with the majority's conclusion that appellant's claims relating to the sign easement are time-barred.  In my view, rather than precluding these

31.

claims as a matter of law, appellant's failure to object to the old sign (built in 1986) raises a genuine issue of material fact as to whether appellant's claims relating to the new sign (built in 2012) are barred by the doctrines of waiver and estoppel. Finally, I believe that there are genuine issues of material fact regarding whether the new sign violates the easement. For these reasons, I respectfully dissent, in part.

{¶ 66} The record shows that, between 1986 and 2012, appellee maintained a simple sign on appellant's property that identified the location of the Dunn Chevrolet and Buick dealership as being "one block" away. That sign was supported by "two narrow, round, and visually unobtrusive poles." Appellant never objected to the old sign, which remained on appellant's property for approximately 26 years, even though appellee's easement is limited to "a single pole identification sign advertising Grantee's business."

{¶ 67} In 2012, appellee erected a new sign that, according to the complaint, is "grossly noncompliant with the terms of the existing Sign License" for various reasons. Appellant initiated suit on November 14, 2014, claiming that the new sign (1) "utilizes two (2) pillars of substantial size to support a large sign that displays a car dealership's logo and marks," (2) contains a large electronic board that displays flashing pictures, texts, and other advertising information, (3) "does not comply with, and/or conform to, applicable codes and ordinances of the City of Oregon regarding signage erected within the City" and (4) is so large that it "obstruct[s the] view of the other signage on [appellant's] property, causing clutter and confusion for [appellant's] tenants and customers * * *" and impacting appellant's ability to "develop and market its property."

32.

{¶ 68} In my view, this case was filed well-within the applicable 15-year statute of limitations of former R.C. 2305.06. "Ordinarily, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Collins v. Sotka*, 81 Ohio St.3d 506, 507, 692 N.E.2d 581 (1998). Here, the allegedly "wrongful act" occurred in 2012 when appellee constructed the brand-new sign with two large pillars and an additional electronic display board. Although the "two narrow, round, and visually unobtrusive poles" that supported the previous sign remain in place (hidden from view underneath the two large pillars), appellant does not—and never has— objected to the *poles*. Rather, appellant objects to the two large *pillars* that were built around those poles in 2012. That is, appellant claims that the new "double pillar" sign violates the easement because it is not a "single pole" sign, as required. How could appellant have possibly filed this claim by 2001—as the majority concludes it should have—when the offending pillars were not erected until 2012?

{¶ 69} Although I believe that appellant's claim is not time-barred, the fact that appellant did not object to the previous two-pole sign—which remained on appellant's property for approximately 26 years—is still relevant to the case. In my view, the relevant issue is whether, by failing to object to the old sign (which patently violated the "single pole" requirement), appellant waived its right to enforce, or should be equitably estopped from enforcing, the easement's "single pole" restriction against the new sign.

{¶ 70} Waiver can be express or implied. Generally speaking, "[w]aiver as applied to contracts is a voluntary relinquishment of a known right." *White Co. v. Canton*

*Transp. Co.*, 131 Ohio St. 190, 2 N.E.2d 501 (1936), paragraph one of the syllabus. "Under the doctrine of 'waiver by estoppel' or implied waiver, a party to a contract may waive the right to literal compliance with the terms of the contract by engaging in actions or a course of conduct inconsistent with literal compliance." *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Commrs.*, 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921, ¶ 77 (7th Dist.). "'Whether an alleged waiver is express or implied, it must be intentional. Mere negligence, oversight, or thoughtlessness does not create a waiver.'" *Hicks v. Estate of Mulvaney*, 2d Dist. Montgomery No. 22721, 2008-Ohio-4391, ¶ 13, quoting *Russell v. Dayton*, 2d Dist. Montgomery No. 8520, 1984 WL 4896, *3 (May 18, 1984).

{¶ 71} "Although waiver is typical of estoppel, estoppel is a separate and distinct doctrine. With estoppel, it is not necessary to intend to relinquish a right." *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 279, 690 N.E.2d 1267 (1998). The doctrine of equitable estoppel "'prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.'" *Id.*, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188 (1994). Thus, "estoppel involves the conduct of both parties, whereas waiver depends upon what one intends to do." *Id.*

{¶ 72} In my opinion, there is a genuine issue of material fact regarding whether the doctrines of waiver and estoppel preclude appellant's claim that the new sign violates the "single pole" restriction. As shown by the photographs that were offered into

evidence, the new sign is vastly different from the old sign. The old sign, supported by two narrow poles, merely stated that the "Dunn Chevrolet Buick" dealership was "one block" away, with a directional arrow pointing towards the dealership. On the other hand, the new sign is larger, supported by two wide pillars (that appear to restrict the line of sight to a greater degree than the previous two poles), and now includes an electronic messaging board that can display a variety of images and texts. Given the differences between the two signs, I believe a question of fact remains as to whether appellant intentionally waived its right to enforce the single-pole restriction against the new sign by not enforcing the single-pole restriction against the previous sign. And, regarding equitable estoppel, it is not clear whether appellant somehow induced appellee into believing that the new sign would not be objectionable, or whether appellee reasonably relied upon any such representations by appellant when building the new sign. I believe these are factual issues that should be resolved at trial.

{¶ 73} Although appellant argues that the doctrines of waiver and estoppel are inapplicable to express easements, I disagree. Several Ohio courts have held that "equity does not acknowledge the *extinguishment* of * * * an [express] easement by recourse to estoppel and laches." (Emphasis added.) *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. Lake No. 2003-L-192, 2005-Ohio-3398, ¶ 50; *see also Ohio Edison Co. v. Wilkes*, 7th Dist. Mahoning No. 10 MA 174, 2012-Ohio-2718, ¶ 67 ("there is no extinguishment of an express easement based upon estoppel and laches"); *Merrill Lynch Mtge. Lending, Inc. v. Wheeling & Lake Erie Ry. Co.*, 9th Dist. Summit No. 24943, 2010-

Ohio-1827, ¶ 42 (doctrine of laches cannot extinguish an express easement).  Here, nobody is arguing that any easement rights should be extinguished.  To the contrary, the issue is whether appellant can enforce an express limitation upon appellee's easement rights.  The cases relied upon by appellant are, therefore, inapplicable.

{¶ 74} Finally, I believe that a question of fact remains as to whether the new sign violates the maximum square footage requirement of the easement, which states:

> Any such sign shall be installed on the Sign License Area in conformance with all applicable codes and ordinances of the City of Oregon and shall contain a maximum of one hundred twenty-five (125) square feet on each face.

{¶ 75} This provision contains two separate and distinct requirements—the sign must comply with the city of Oregon's municipal ordinances *and* contain a maximum of 125 square feet "on each face."  Although the city of Oregon did not include the pillars when calculating the square footage of the sign for purposes of the permit and inspection report, that fact is dispositive of the first requirement (compliance with Oregon city ordinances) but not the second requirement (maximum square footage).

{¶ 76} Whether the sign satisfies the easement's maximum square footage requirement depends upon what is considered to be the "face" of a sign.  The easement does not define "face" and its meaning cannot be derived from the four corners of the easement.  Is a sign's "face" limited to areas containing text or graphics?  If so, appellee has submitted evidence that the "face" of the sign is less than 125 square feet.  Does a

36.

sign's "face" include flat areas (like the pillars) that could contain text or graphics, but do not? If so, appellant has submitted evidence that the "face" of the sign is more than 125 square feet. Either interpretation is reasonable.

{¶ 77} In my view, the phrase "on each face," as used in the easement, is ambiguous because "its meaning cannot be derived from the four corners of the agreement, or * * * the language is susceptible of two or more reasonable interpretations." *Kademenos v. Harbour Homeowners Assn.*, 193 Ohio App.3d 112, 2011-Ohio-1266, 951 N.E.2d 125, ¶ 16 (6th Dist.). "When a term of a contract is determined to be ambiguous, then the determination of what the actual terms were becomes a question of fact." *Lake Erie Towing v. Troike*, 6th Dist. Erie No. E-05-062, 2006-Ohio-5115, ¶ 13. I believe that a genuine issue of material fact remains regarding the parties' intended meaning of "on each face" as used in the express easement.

{¶ 78} For these reasons, I respectfully dissent, in part. I concur in the remainder of the decision of the majority.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.